Eastern Dist·
Feb'ary, 1828.

*PENNIMAN* vs. *BARRYMORE.*

Surety on a sequestration bond, can't plead deception.

A bond dated the 9th may be shewn to have been delivered the 10th.

The words *fuorteen hundred aud ten* may be understood to be *fourteen hundred and ten dollars.*

**APPEAL** from the court of the parish and city of New-Orleans.

**PORTER. J.** delivered the opinion of the court. This action is brought on a bond given on taking out a writ of sequestration in a suit in which the present plaintiff was defendant. It is in the usual form, with the exception that *fourteen hundred and ten* is written as the amount which the obligors promised to pay, omitting the words dollars. The condition recites the issuing the writ, and states, that should it appear to be wrongfully taken out, the obligors will pay all damages the obligee may sustain therefrom.

The petition avers, the bond was made for $1400, conditioned to pay all damages the plaintiff might sustain, and prays judgment for that sum. The answer of the defendant excepts to the form of the suit, because he was but surety on the bond, and it is not shewn an action had been instituted against the principal—that he is not liable on the obligation for the sum claimed, or any other sum as demanded, and concludes by a prayer in reconvention.

The cause was submitted to a jury in the

court below, who found a verdict in favor of the plaintiff for $1000. The defendant made an unsuccessful attempt to set it aside by a motion for a new trial, and judgment being rendered thereon, he appealed.

The first question in the cause is, whether the defendant being surety can be pursued at law, before recovery is sought from the principal on the bond. We think he may, for the obligation he signed was one required by law in the course of a judicial proceeding, and the right to discussion in such cases is expressly denied by the positive provisions of our code. *Lou. Code,* 3035.

The next is in relation to an alleged defect in the instrument, owing to the bond being dated the 9th January, and the petition in the cause wherein the writ of sequestration was obtained not being filed until the 10th. This circumstance is quite immaterial, provided the obligation was delivered on taking out the writ, and the evidence in the cause we think well justifies the conclusion the jury came to, that it was so delivered.

The most important question in the cause relates to the defect in the bond from the omission of the words dollars, or some other words

Eastern Dis.
Feb'ary1828.
after those of *fourteen hundred and ten.* There
can be no doubt what the parties intended to do

PENNIMAN
*vs.*
BARREMORE
in this instance—there is as little we think,
that the omission of the word dollars proceed-
ed from error or haste in transcribing the bond;
and we are of opinion that the jury and the
court below were authorised to supply the
omission and act on the instrument, as if this
word had been written in it. The laws of this
state direct, that no writ of sequestration shall
issue in a case such as that which the contest
between these parties presented, without bond
and security being given by the party applying
for it. The judge's order in this instance, di-
rected the plaintiff to furnish one in the sum of
$1400. In compliance with the requisition of
the law and the order of the judge, the obliga-
tion was given, and the omission to insert the
words dollars can be considered in no other
light but a clerical error, which may be cor-
rected when there exists as high, or higher evi-
dence that can be resorted to, to ascertain the
meaning and intention of the parties.

Again, when there is doubt as to the sense
in which words are used, they may be explain-
ed by reference to other words and phrases
used in the same contract. Now, in looking

into the condition of this bond, we find the obligors stating it to be, that if the writ was wrongfully sued out, and they paid all the damages arising therefrom, the obligation was to be null and void, otherwise it was to remain in full force and virtue. According to the construction contended for at present, the bond never had any force or virtue, therefore, that construction would lead us to a conclusion, that every thing inserted in the condition was useless and for no purpose. Courts of justice have decided in other countries, that words used in a contract which led to a manifest absurdity might be rejected, or understood, in a sense, by which the agreement would have some effect. As where a man acknowledged to owe a sum of money which he promised *never* to pay.— Where an obligation was made for *threty ponds*, it was held to be one for thirty pounds, to answer the intention of the parties. Where the name of the party contracted with had been omitted by mistake, the omission was allowed to be supplied by parol evidence. And even on an indictment for forgery, where the bill, when produced, appeared to be for fifty, without the addition of the word *pounds*, it was held that the same sum in the margin preceded by the

Eastern Dist. *Feb'ary* 1828.

PENNIMAN
*vs.*
BARREMORE

PENNIMAN
*vs.*
BARREMORE

letter £ removed all doubts, and shewed, the word *fifty,* in the body of the note, was *intended* for pounds. So here we think the order of the judge to give a bond for *fourteen hundred and ten dollars* removes all doubt as to the meaning of the words *fourteen hundred and ten,* inserted in that bond. It is one of the rules of our jurisprudence, that neither the principal or surety can escape from responsibility, by an error that arises in drawing up the act by which they contemplated binding themselves. *Si librarius in transcribendis stipulationis verbis errassit: nihil nocere, quominus et reus et fidejussor tenentur.—Dig. Liv.* 50, *tit.* 17 *l.* 92; *Crojac* 607. 10. *Co.* 133. 13. *Mass.* 161; 2 *East pleas of the crown* 951.

But whether the conclusion we have just expressed be sound or not, upon general principles, there cannot be a doubt of its correctness, when considered in relation to those rules which govern what are termed, in law, judicial conventions. In regard to them, the principle is perfectly established, that where any obscurity or doubt is presented by the terms in which they are drawn up, they must be interpreted by the sentence or order in pursuance

of which they were made. *Dig. liv. 45, tit.* 1,
*law* 52; *ibid, liv.* 46, *tit.* 5, *law* 9; *Domat*
*liv.* 1, *tit.* 1, *sect.* 2, *no.* 24.

The counsel for the defendant has contended, that the slightest defect in an instrument of this kind, or variance from an order of the court, renders it null and of no effect. The argument confounds the rights of the obligee and obligor. It is no doubt true, the former has a right to exact from his adversary a strict compliance with all the previous steps which may be required before process can issue. But if the latter fails to comply with them, and, as in this instance, furnishes an obligation which tho' defective in point of form, substantially and really, contains an engagement on his part, it ill becomes him, or those who join him, to endeavour to shelter themselves from responsibility, by pleading defects which proceeded either from negligence or bad faith, and it would be a just reproach to the law if it suffered such a defence.

On the whole, we can discover no error in the judgment below, except that part which adds interest from judicial demand on the amount found by the jury. The judge had no power either to add to the verdict, or diminish

it. This point was fully examined in the case
of *Bedford* vs. *Jacobs, vol. 5.*

PENNIMAN
*vs.*
BARREMORE
It is therefore ordered, adjudged and decreed,
that the judgment of the parish court be an-
nulled, avoided and reversed, and it is further
ordered, adjudged and decreed, that the plain-
tiff recover from the defendant the sum of one
thousand dollars, with costs in the court of the
first instance, those of appeal to be borne by
the appellee.

*Morse* for the plaintiff, *Mercier & Buchan-
an* for the defendant.